## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SANDTRELL BRODEN**                                                    **CIVIL ACTION**

**VERSUS**                                                                        **No. 22-1573**

**RIVERLANDS HOME GROUP, L.L.C., ET AL.**                    **SECTION I**

### ORDER & REASONS

Before the Court is a motion[1] to remand filed by plaintiff, Sandtrell Broden

("Broden"), who filed this action on behalf of her deceased father, Russell Alexander

("Alexander").[2]  Broden contends that this Court lacks federal question jurisdiction

and, therefore, subject matter jurisdiction.   Riverlands Home Group, LLC and

Priority Management Group, LLC (collectively "defendants"), oppose[3] the motion,

arguing that the Court has subject matter jurisdiction because Broden's petition

raises a substantial federal question and requests damages only available under

federal law.  For the following reasons, the Court grants the motion to remand.[4]

**I.**

This case arises out of the alleged understaffing of a nursing home.[5]  Broden

filed a petition in Louisiana state court, claiming that Riverlands Home Group owns

---

[1] R. Doc. No. 4 (motion); R. Doc. No. 13 (reply memorandum).

[2] R. Doc. No. 1-1, at 7 ¶ 17.  Broden also seeks to bring this action on behalf of all those who are similarly situated.  R. Doc. No. 1-1, at 3.

[3] R. Doc. No. 7.

[4] This opinion is nearly identical to this Court's opinion resolving a similar motion to remand in *Drema Cambre v. Riverlands Home Group, L.L.C., et al.*, Civil Action No. 22-1517. The motions in both cases were submitted contemporaneously, and in each case the parties' arguments identified the same issues, and remand is proper for the same reasons.

[5] R. Doc. No. 1-1, at 4.

a nursing home located in Lutcher, Louisiana that is managed and operated by Priority Management Group.[6]  Broden's father, Alexander, was a resident at the nursing home.[7]  Broden's petition alleges[8] that the defendants violated the Louisiana Nursing Home Residents' Bill of Rights ("Nursing Home Bill of Rights"), *see* La. R.S. § 40:2010.8, which protects a resident's "right to receive adequate and appropriate health care and protective and support services[.]"  *Id*. at § 40:2010.8(A)(7).  Broden also claims that the defendants violated Louisiana state regulations that impose an obligation on defendants to provide "a sufficient number of nursing service personnel."[9]  According to Broden's petition, the defendants "did not devote sufficient financial resources to the proper operation of the [nursing home]," and "did not devote sufficient financial resources to protect the health and safety of residents and ensure resident rights were not violated[.]"[10]  Lastly, Broden also references federal regulations that she maintains imposed an obligation on defendants to provide "sufficient nursing staff."[11]

One paragraph in Broden's petition incudes a five-step methodology to compare the actual staffing levels at the defendants' nursing home to a higher standard that Broden contends is "appropriate."[12]  To arrive at this higher standard, Broden uses a number of data sources, including "facility assessments of the staffing

---

[6] R. Doc. No. 1-1, at 2 ¶ 1.
[7] *Id*. at 10 ¶ 29.
[8] *Id*. 3–4.
[9] *Id*. at 4 ¶ 9 (citing La. Admin. Code tit. 48, pt. I, § 9823(A)).
[10] *Id*. at 5 ¶ 12.
[11] *Id*. at 4–5 ¶¶ 10-11 (citing 42 C.F.R. 483.35).
[12] *Id*. at 6 ¶ 15.

resources needed to provide care," Center for Medicaid and Medicare Services ("CMS") Minimum Data Set ("MDS") resident assessments, Resource Utilization Group ("RUG") scores, CMS Form 672 summary of resident needs and costs reports, and CMS Patient-Driven Payment Model ("PDPM") scores.[13]

Based on these various sources of data, Broden claims that, given the nursing home's "resident acuity," defendants should have provided 4.49 nursing hours "per patient day" ("PPD").[14] Broden further alleges that defendants' nursing home only provided 3.43 nursing hours PPD, 24% below the standard Broden claims is appropriate.[15] Broden claims that this 24% gap demonstrates that defendants did not provide "appropriate nursing" and therefore violated the Nursing Home Bill of Rights.[16]

Broden also claims that the defendants made "affirmative representations," as required by the Nursing Home Bill of Rights, during the resident admission process that the defendants would comply with the Nursing Home Bill of Rights.[17] Broden claims that these statements were "knowing, intentional/fraudulent misrepresentations … [that] deprived residents … of 24% of the nursing services promised such that the resulting damages total 24% of the amount of the money paid[.]"[18] With respect to relief, Broden seeks statutory penalties, attorney's fees, and

---

[13] *Id.*
[14] *Id.* at 6–7 ¶¶ 15–16.
[15] *Id.* at 6–7 ¶ 16; R. Doc. No. 9, at 4.
[16] *Id.* at 6–7 ¶¶ 15–16.
[17] *Id.* at 4 ¶ 8.
[18] *Id.* at 5 ¶ 13.

injunctive relief provided under the Nursing Home Bill of Rights, as well as general and special damages.[19]

The defendants removed the matter to this Court.[20]  Broden subsequently moved to remand the matter back to state court, asserting a lack of subject matter jurisdiction, specifically a lack of federal question jurisdiction.[21]  Broden argues that the understaffing claims in the state court petition arise solely under the Nursing Home Bill of Rights, and that citations in her petition to federal regulations are "merely evidence that [d]efendants have breached their state-law duties of care."[22] Broden also argues that she should be awarded attorney's fees and costs since the defendants did not have an objectively reasonable basis for removal.[23]

The defendants oppose remand, arguing that federal question jurisdiction exists.[24]  The defendants note that a Louisiana regulation—which Broden references to show that the defendants had an obligation to provide sufficient nursing, *see* La. Admin. Code tit. 48, pt. I, § 9823—states that "[a]t a minimum, the nursing facility shall provide 2.35 hours of care per patient per day."[25]  The defendants argue that Broden's five-step methodology underlying her proposed staffing requirement of 4.49 nursing hours PPD is an expert's "melding of *federal* requirements and data[.]"[26]

---

[19] *Id*. at 11–12 ¶¶ 32–35.
[20] R. Doc. No. 1.
[21] R. Doc. No. 4.
[22] R. Doc. No. 4-1, at 4.
[23] *Id*. at 14.
[24] R. Doc. No. 7.
[25] *Id*. at 4.
[26] *Id*. at 4, 14 (emphasis in original).

In this posture, the defendants maintain that Broden's state-law cause of action necessarily implicates a federal issue pursuant to *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).[27] Further, the defendants claim that Broden's request for "recoupment damages" due to misrepresentations on nurse staffing levels are actually an implied *qui tam* action under the federal False Claims Act.[28]  Lastly, the defendants argue that, even if the Court grants Broden's motion to remand, an award of attorney's fees would be improper because the defendants basis for removal was objectively reasonable.[29]

## II.

Any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending, unless Congress provides otherwise.  28 U.S.C. § 1441(a).  Further, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," otherwise known as federal question jurisdiction.  28 U.S.C. § 1331.

As a general matter, "questions concerning federal question jurisdiction are resolved by application of the 'well-pleaded complaint' rule."  *Hart v. Bayer Corp.*, 199 F.3d 239, 243 (5th Cir. 2000) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152-53 (1908)).  "The rule provides that the plaintiff's properly pleaded complaint

---

[27] R. Doc. No. 7, at 4–5.
[28] *Id.* at 12–13.
[29] *Id.* at 14–15.

governs the jurisdictional inquiry." *Id.* at 243–44. "If, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking." *Id.* at 244 (citing *Franchise Tax Bd. of the State of Cali. v. Constr. Laborers Vacation Trust for S. Cali.*, 463 U.S. 1, 10, (1983)).

The removing party "bears the burden of demonstrating that a federal question exists." *Gulf Coast Plastic Surgery, Inc. v. Standard Ins. Co.*, 562 F. Supp. 2d 760, 764 (E.D. La. June 3, 2008) (Vance, J.) (citing *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Smith v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 735 F. App'x 848, 852 (5th Cir. 2018) (internal quotation omitted); *see also African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) ("any contested issues of facts and any ambiguities of state law must be resolved in favor of remand" (quotation omitted)).

### III.

### A.

The crux of the defendants' argument is that removal was proper pursuant to *Grable*.[30] "In *Grable*, the Supreme Court recognized that 'in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues.'" *Mitchell v. Advanced HC, L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022) (quoting *Grable*, 545 U.S. at 312). "*Grable* applies if: '(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the

---

[30] R. Doc. No. 7, at 5–12.

6

federal issue is substantial; *and* (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.'" *Id.* (quoting *The Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 529 (5th Cir. 2020)) (emphasis added). "These conditions are difficult to meet." *Id.* "Like most federal question doctrines, *Grable* is applied in the shadow of the well-pleaded complaint rule." *Id.* "Thus, the court looks to the face of a plaintiff's well-pleaded complaint to determine whether the issues it raises implicate *Grable*." *Id.* "The category of cases that satisfy these requirements is 'special and small.'" *Id.* (quoting *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721 (5th Cir. 2017)).

The defendants argue that *Grable*'s four prongs are satisfied with respect to Broden's allegations that the defendants violated the Nursing Home Bill of Rights based on nurse understaffing.[31] Specifically, the defendants contend that Broden's methodology of calculating the appropriate nurse staffing level depends on a "melding of *federal* requirements and data," thus creating federal jurisdiction.[32]

### 1.

For an embedded federal issue to be "necessary" pursuant to *Grable*, the issue must be an essential element of Broden's claim, such that Broden could not succeed without it. *Grable,* 545 U.S. at 314–15. The federal issue is not "necessary" if it is "used merely as further evidence of the right to recover under state law." *Till v. Unifirst Fed. Sav. & Loan Assoc.*, 653 F.2d 152, 155 n.2 (5th Cir. 1981).

---

[31] R. Doc. No. 7, at 5–12.
[32] *Id.* at 14 (emphasis in original).

7

In general, Louisiana law protects nursing home residents' "right to receive adequate and appropriate health care and protective and support services, including services consistent with the resident care plan, with established and recognized practice standards within the community, and with rules promulgated by the Louisiana Department of Health." La. R.S. 40:2010.8(A)(7). Louisiana law also requires that nursing home facilities "shall provide a sufficient number of nursing service personnel consisting of registered nurses, licensed practical nurses, medication attendants certified, and certified nurse aides to provide nursing care to all residents in accordance with resident care plans 24 hours per day." La. Admin. Code tit. 48, pt. I, § 9823(A).

Defendants emphasize[33] that a particular Louisiana regulation provides that "[a]t a minimum, the nursing facility shall provide 2.35 hours of care per patient per day." La. Admin. Code tit. 48, pt. I, § 9823(A)(1). The defendants argue that, because Broden acknowledges that the defendants provided 3.43 nursing hours PPD, Broden could only show that the defendants are liable by relying on federal law.[34]

Defendants' argument is unpersuasive. The fact that Louisiana law specifies a "minimum" required number of nursing hours does not necessarily signify that all nursing hours above that minimum are "sufficient." Indeed, Louisiana regulations also state that a nursing facility shall provide "sufficient nursing staff to provide nursing and related services that meet the needs of each resident." La. Admin. Code

---

[33] Doc. No. 7, at 4.
[34] *Id.* at 9.

tit. 48, pt. I, § 9821.  That regulation likewise provides that the nursing facility "shall assure that each resident receives treatments, medications, diets and other health services as prescribed and planned, all hours of each day." *Id.*  The defendants have offered no authority that compliance with the minimum requirement in Section 9823(A)(1) of the Louisiana Administrative Code also establishes compliance with Louisiana's other regulations.  *Cf. MacRae v. HCR Manor Care Services*, No. 14-715, 2014 WL 12588464, at *5 (C.D. Cal. Oct. 30, 2014) (assessing similar California staffing regulations and finding that "[n]othing in the text of the regulations indicates that if a nursing home fulfills the minimum level of … nursing hours, it necessarily has 'an adequate number' of personnel").

Further, the defendants have not clearly identified any particular federal issue that they maintain is necessary to Broden's case.  Throughout their argument, the defendants make vague contentions, such as "[p]laintiff makes nuanced allegations based on the federal regulation,"[35] without specifying *which* regulation.[36]  In this posture, the defendants have not carried their burden of demonstrating that resolution of a federal issue is necessary to this case.

**2.**

Defendants must also prove that there is an actually disputed federal issue. *Mitchell*, 28 F.4th 580, 588.  In their opposition to remand, the defendants state that

---

[35] R. Doc. No. 7, at 9.
[36] *See*, *e.g.*, *id*. at 3 ("based on data reported to CMS and a strained interpretation of the requirements of federal regulations") 11 ("the Petition expressly alleges a violation of federal law and seeks relief based on federal requirements").

they dispute Broden's five-step methodology for determining the nursing hours that defendants' facility should provide because it is a "strained interpretation" of federal regulations, borrowed from a research paper authored by several university professors.[37]

The defendants do not explain *which* federal issue is in dispute.  Indeed, Broden's state court petition identifies certain sources of data that she consulted to calculate her proposed appropriate standard of nursing hours.  But she does not identify any federal requirement that informed her calculation.[38]

Broden's use of federal data from the CMS does not necessarily demonstrate that there is a dispute of federal law that justifies resorting to the "experience, solicitude, and hope of uniformity that a federal forum offers." *Grable*, 545 U.S. at 312.  Here, the "[d]efendants are woefully non-specific as to the precise disputed issue of federal law between the parties. Simply asserting that the subject matter of the suit implicates a federal regulatory scheme is insufficient to establish a relevant dispute of federal law." *Dinvaut v. Cambridge Energy Corp.*, No. 17-5630, 2017 WL 3484759, at *3 (E.D. La. Aug. 15, 2017) (Africk, J.).

**3.**

Defendants also have the burden of showing that the disputed issue is "substantial." *Mitchell*, 28 F.4th 580, 588.  While the "actually disputed" prong of *Grable* requires the federal issue to have importance to the instant dispute between

---

[37] R. Doc. No. 7, at 3–4, 8, 12.
[38] R. Doc. No. 1-1, at 6–7 ¶¶ 15–16.

the parties, the "substantial prong" requires the federal issue to have "importance …

to the federal system as a whole." *Gunn v. Minton*, 568 U.S. at 260.  Some examples

of substantial federal issues include whether the government can take administrative

action or whether a federal law is constitutional.  *Id.* at 261.  The resolution of a

federal issue is substantial if it "would govern numerous … cases," and it is not

substantial if it is "fact-bound and situation-specific." *Empire HealthChoice Assur.,*

*Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006).

The defendants' argument clearly misunderstands this prong, stating that

"substantiality[ ] is demonstrated by [p]laintiff's express reliance on federal

requirements to demonstrate both duty and breach."[39]  This argument erroneously

focuses on the importance of the federal issue with respect to the instant case as

opposed to the "federal system as a whole." *Gunn*, 568 U.S. at 259.  Defendants do

not provide any other explanation as to why any potential federal issue is substantial.

Accordingly, the defendants have failed to carry their burden with respect to the

substantial prong.[40]

### 4.

Lastly, the defendants must demonstrate that federal jurisdiction will not

disturb the balance of federal and state judicial responsibilities. *Mitchell*, 28 F.4th

---

[39] R. Doc. No. 7, at 12.

[40] If the defendants had clearly argued that specific federal regulations do not impose requirements on nursing homes, then such an issue could have widespread and perhaps substantial importance.  However, if defendants simply dispute Broden's use of data provided to the federal government, then the resolution of the issue would be cabined to this case.

580, 588.   *Grable* imposes this requirement to avoid "herald[ing] a potentially enormous shift of traditionally state cases into federal courts."   *Singh,* 538 F.3d at 340 (citing *Grable*, 545 U.S. at 319).   This prong is satisfied when the resolution of the federal issue only has a small effect on "the federal-state division of labor."   *Id.* at 340 n.7 (quoting *Grable*, 545 U.S. at 315).

As with the substantial prong, the defendants' argument clearly misunderstands the pertinent inquiry.   The defendants point to the "deep and longstanding presence of the federal government in the realm of nursing home staffing" and initiatives by President Biden to reform nursing home staffing standards to show that "the exercise of jurisdiction over these claims will not threaten the balance of federalism."[41]   However, this prong is not concerned with the general concept of federalism and the roles of the legislative or executive branch.   Rather, this prong concerns the division of labor between the state and federal judiciaries.   *Singh,* 538 F.3d at 340.   The defendants' argument fails with respect to this prong because it contains no discussion of whether federal jurisdiction would "herald a potentially enormous shift of traditionally state cases into federal courts."   *Id.*

Further, because the defendants have failed to specify the exact nature of the federal issue, it is impossible to discern the number of state cases that could be shifted into federal court.   In this posture, the defendants have not carried their burden of demonstrating that federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.

---

[41] R. Doc. No. 7, at 2, 12.

**5.**

All things considered, the defendants have the burden to establish that this case satisfies each of the four *Grable* prongs to justify removal. *Mitchell*, 28 F.4th at 588. The defendants did not make a sufficient showing with respect to any of the *Grable* prongs, and federal question jurisdiction does not exist.

**B.**

Next, the defendants argue that Broden appears to bring a *qui tam* action under the False Claims Act based on the damages that Broden requests, specifically damages that Broden maintains result from the defendants' "intentional/fraudulent misrepresentations," which the defendants call "recoupment damages."[42] This argument fails because the factual allegations in Broden's petition do not support an implicit *qui tam* action.

A *qui tam* action is a cause of action under the False Claims Act where a private person, called a "relator," brings a claim on behalf of the government to impose civil liability against another party who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the government. *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019) (citing 31 U.S.C. §§ 3729–3730).

---

[42] R. Doc. No. 7, at 12. Defendants claim that "[t]here is no authority for recoupment damages under Louisiana law" but do not cite to any source for this assertion. *Id.* Broden suggests that the recoupment damages are supported under state law as a claim for fraudulent misrepresentation. R. Doc. No. 13, at 6–8.

Broden's petition contains no allegations to suggest that she brings her claims on behalf of the government or that the defendants submitted false claims to the government in order to receive payments. Instead, Broden only claims that defendants made misrepresentations about the level of nurse staffing that the defendants would offer in order to solicit business.[43] There is no indication that this claim is or could be brought as *qui tam* action under the False Claims Act.[44]

In sum, Broden's petition does not explicitly cite any federal law that would support the "recoupment damages," and the defendants have not identified any federal law that would support such damages. In this posture, Broden's request for "recoupment damages" is not a *qui tam* action that would support federal question jurisdiction.

## C.

In addition to remand, Broden seeks an award of attorney's fees and costs.[45] "Absent unusual circumstances, courts may award attorney's fees under 28 U.S.C. § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

---

[43] R. Doc. No. 1-1, at 4–5, 7, 10, 11–12 ¶¶ 8, 13, 17, 30–36.

[44] As to this issue, the defendants cite a single *qui tam* case in support of their position: *United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431 (E.D. Pa. 2020). The *Kindred Healthcare* court dismissed a *qui tam* claim because 42 C.F.R § 483.35—a federal regulation that Broden references in her petition—"makes no reference to the allocation or use of Government funds" and "[plaintiff] pleads no other facts to support … that the staffing requirements in 42 C.F.R § 483.35(a)(1) … are material to … [a] payment decision" by the government. *Id.* at 449–50.

[45] R. Doc. No. 4-1, at 13–14.

Having reviewed all the parties' arguments and the applicable law, the Court exercises its discretion to decline to award attorney's fees and costs.

## IV.

For the reasons stated above,

**IT IS ORDERED** that Broden's motion[46] to remand is **GRANTED**.  The above-captioned matter is **REMANDED** to the Twenty-Third Judicial District Court for the Parish of St. James, State of Louisiana.

**IT IS FURTHER ORDERED** that Broden's request for attorney's fees and costs is **DENIED**.

New Orleans, Louisiana, June 27, 2022.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[46] R. Doc. No. 4.